## Mead and others vs. Nelson.

*April 25 — May 10, 1881.*

Tax Sales and Deeds: Limitation of Action. *(1) When a plaintiff in ejectment may set up the limitation of actions to vacate tax sales or cancel the certificates. (2) In what cases the nine months' limitation still in force. (3) Resolution of county board instructing clerk to issue tax deeds, construed. (4) What constitutes an "application" for a tax deed.*

1. Sec. 7, ch. 334, Laws of 1878, provides that "every action or proceeding to set aside any sale of lands for the non-payment of taxes, or to cancel any tax certificate . . . shall be commenced within nine months" after the date of such sale or certificate, etc. *Held,* that this limitation applies not only to a direct proceeding in equity by the owner to set aside such a sale or certificate, but also to an avoidance, by plaintiff in ejectment, of a tax deed to defendant, by proof of irregularities in the tax proceedings invalidating the sale and certificate.

2. As to all tax sales and certificates on which the nine months' limitation had commenced to run before the present revision took effect, the act of 1878 creating that limitation still remained in force, though omitted from the revision, and no longer in force as to sales made thereafter. Compare secs. 4221 and 4984, R. S.

3. A resolution of a county board instructing the county clerk "to issue a tax deed to the county on all certificates remaining in the county treasurer's office three years from the date of their issue," *held* to create a continuing authority in the county clerk, until it should be rescinded, to execute tax deeds from year to year thereafter, whenever the three years for redemption upon any tax certificates should expire; and the county board was authorized to give such a direction by § 146, ch. 18, Tay. Stats., then in force.

4. Sec. 1175, R. S., provides that when land sold for taxes has not been occupied for at least thirty days "at any time within the six months immediately preceding the time when the tax deed upon such sale shall be applied for," no tax deed shall be issued upon the certificate, except upon proof filed with the officer whose duty it is to issue such deed, that the land was not so occupied. The statute is silent as to the manner of applying for the deed. *Held,* that the making and filing with the proper officer of an affidavit of the non-occupancy of the land constitute in themselves, without further showing, a sufficient application for the deed, especially where the affidavit states (as in this case) that it is

"made for the purpose of obtaining" such deed; and the fact that the deed itself is dated some weeks later, is no ground for presuming that the application was not made until such later date, and holding the affidavit insufficient as not showing non-occupancy of the land for the six months "immediately preceding" such application.

APPEAL from the Circuit Court for *Waupaca* County.

Ejectment, for a quarter-quarter section of land. The action was brought by *Joel L. Mead* and three others, and was commenced March 22, 1880. Answer, that defendant is seized in fee of an undivided one-half of the land, by deed from the county of Waupaca dated December 3, 1879, the county having acquired title to such undivided one-half by tax deed dated and recorded June 23, 1879. The answer also alleges that the cause of action stated in the complaint did not accrue within nine months before the commencement of the action.

The circuit court held that the tax deed to the county was valid, and that defendant did not unlawfully withhold possession of the premises, etc. From a judgment in defendant's favor, the plaintiffs appealed.

The nature of the errors alleged in the rulings of the court will sufficiently appear from the opinion.

*G. W. Washburn*, for appellants.

For the respondent there was a brief signed by *Myron Reed*, his attorney, and *Hastings & Greene*, of counsel, and oral argument by *Mr. Hastings*.

ORTON, J. The defendant was allowed to introduce in evidence a tax deed to the county of Waupaca of an undivided half of the premises. The tax deed bears date June 23, 1879, and the tax certificate upon which it was issued bears date May 9, 1876. On the trial the plaintiffs offered, but were not allowed, to show certain irregularities in the tax proceedings anterior to the issuing of the certificate. Such evidence was excluded on the ground that the statutory limitation of nine months in which the tax certificate could be avoided for any

such causes, had expired; The statute of limitation and its effect upon this certificate are, therefore, first to be considered. Section 7, ch. 334, Laws of 1878, provides that "every action or proceeding to set aside any sale of land for the non-payment of taxes, or to cancel any tax certificate, . . . shall be commenced within nine months after the making of such sale, date of such certificate, . . . as the case may be, and not thereafter: *provided*, that in the case of sales, tax certificates, . . . heretofore made, . . . such action or proceeding, if not already barred, may be brought within nine months after the publication of the act, and not thereafter." This act was published March 25, 1878.

The learned counsel of the appellant assumes two positions against the application of this section to this tax certificate: *First*, that it only applies to direct proceedings in equity by the owner " to set aside any sale or cancel any certificate," and not to the same grounds alleged by the plaintiff in rebuttal of a defense to an action of ejectment predicated upon a tax sale or certificate. In this case there is no replication setting up such matter and asking for such relief against the tax sale or certificate, and perhaps no replication was necessary under our practice; but the testimony offered by the plaintiffs to avoid the effect of this tax sale and certificate is precisely of the same nature and effect, and, if made available to the plaintiffs in this way, the record of such adjudication would be thereafter conclusive upon such matters, as in a direct proceeding to set aside or cancel them. We are, therefore, of the opinion that this salutary limitation has application to protect the sale and certificate against such showing in this case. The *second* position assumed is, that the parts of this section relating to tax sales and certificates, upon which the statute had not already run, were repealed by the revision of 1878. This may be so, but it was obviously a mistake of the committee on revision in not incorporating this act of the legislature of 1878 correctly and fully into the revision, as they should have done.

But the revision, as a general law, having been passed and enacted by the legislature with its repealing provisions, must be held to have repealed the parts of the proviso of said section so omitted. On this question we fully adopt the view of the learned counsel of the respondent, that, notwithstanding the repeal in this way of the nine-months' limitation as to such tax sales and certificates, yet, as the Revised Statutes contain a limitation of actions for this purpose in section 4221, R. S., the tax sale and certificate are within the provisions of section 4984, R. S., that where the limitation has begun to run under an act repealed by the revision, the act repealed continues in force and determines such limitation.

The nine-months' limitation under the statute of 1878 having in most part run upon this sale and certificate before its repeal, such remedy against them is now barred. This disposes of all questions relating to the sale or certificate; but the tax deed remained at the time of this showing still open to attack for any causes subsequent to the certificate. The only objections to the deed in this case earnestly insisted on by the learned counsel of the appellant are: *First*, that the resolution of the county board of supervisors of November 20, 1877, did not specifically authorize the execution of this tax deed, and could not authorize the execution of tax deeds generally upon certificates where the three-years' redemption had not already expired. That resolution was as follows: "*Resolved*, that the county clerk be instructed to issue a tax deed to the county on all certificates remaining in the county treasurer's office three years from the date of their issue, and that the county treasurer turn over to said county clerk all certificates so remaining in his office." It is quite evident that this resolution, by its terms, until rescinded, created a continuing authority in the county clerk to execute tax deeds from year to year, when the three-years' redemption had expired. It is contended, however, that the statute (Tay. Stats., ch. 18, § 146) then in force did not authorize a resolution so broad in its terms, but one

limited to the execution of each deed to be issued, or to cases where the time of redemption had already expired when the resolution was adopted. The proviso of that section is, "that no such deed shall issue until the county board of supervisors shall by resolution order the same." It would be most unreasonable to construe this language to require a resolution for each deed to be issued. In the first part of the section the language is, "when *any* land so bid off," etc., "the clerk . . . shall execute a deed," etc.; and then the proviso follows, "no *such deed* shall issue," etc. Although the singular number is here used, the language, taken together, is the common form of expression in statutes to embrace a certain class of subjects of the same character. As to the objection that the resolution authorizes the issuing of tax deeds in cases where the time of redemption has not expired before its adoption, it is sufficient to say that the statute does not limit the time, but only the terms, upon which the deed may issue, and there appears to be no good reason why the resolution may not be made to apply to all cases which may arise while the resolution is in force.

It is objected, *secondly*, that the affidavit or proof of the non-occupancy of the land required to be made by section 1175, R. S., is insufficient, because, as it was made on the 28th of May, 1879, and as the deed was not executed until the 23d day of June following, it must be presumed that the deed was not "applied for" until immediately before it was executed. The statute requires "proof" filed with such officer that the land described in such certificate was not occupied or possessed for the period of thirty days or more, at any time within six months *immediately preceding* the time when the tax deed upon such sale shall be "applied for." The affidavit substantially complies with the terms of the statute, and states further that it is made "for the purpose of obtaining a tax deed." This affidavit was sworn to before and filed with the county clerk, whose duty it was to issue the deed. The statute is

silent as to the manner or form of "applying" for the deed, and in this case there was no direct proof that there was any other application than the making and filing of the affidavit. Treated as a presumption merely, it seems to us that it is so strong as to be nearly positive proof that the application for the deed was made at the time of the making and filing of the affidavit. But we are inclined to hold that the making and filing of the affidavit in themselves, without further showing, constituted a sufficient application for the deed, and especially when the affidavit states "that it is made for the purpose of obtaining it."

*By the Court.* — The judgment of the circuit court is affirmed.